**SO ORDERED.**

**SIGNED this 29 day of June, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

**IN RE:**

**JEREMY LEE CRIBB,
AMY AMANDA CRIBB,**

            **Debtors.**        **Case No. 07-01415-8-JRL
                                                    Chapter 13**

## ORDER

The matters before the court are the debtors' motion for turnover order and Kathy and Morris Cartrette's motion for relief from stay and for show cause order. On June 13, 2007, the court conducted a hearing on these matters in Wilmington, North Carolina.

Prior to filing this bankruptcy case on April 16, 2007, the debtors operated a restaurant in Whiteville, North Carolina. The debtors leased the premises for the restaurant from Cathy Cartrette ("Leased Premises"). The Leased Premises consisted of a metal building that previously housed a teacher supply store, a wooden building with a porch where Ms. Cartrette previously operated a small café, and 5.020 acres. The debtors entered the lease on February 7, 2006, which was later modified on June 5, 2006 to change the due date for monthly payments to the twentieth day of each month. The debtors were obligated to make monthly payments of $3,000.00 to BB&T, assume all taxes on the

property, and maintain proper insurance coverage with minimum replacement coverage of $500,000.00.

At the time of originally signing the lease, Ms. Cartrette removed some of her personal possessions from the Leased Premises, including a tanning bed, teacher supplies, a cash register, and other personal items. Ms. Cartrette, however, left a number of possessions on the Leased Premises that had been used in her café. The inventory of property left on the Leased Premises includes: 12 dining room tables, 40 dining room chairs, 21' counter/bar, four patio tables, 22 patio chairs, commercial cappuccino machine, coffee grinder, coffee maker, six coffee bean jars, double washing sink combination, single prep sink, prep table, grill cook top with two burners, single deep fryer, double-door free-standing oven, salad prep / refrigerator combination, single-door refrigerator, two porcelain-front freezers, single porcelain hand washing sink, and a 24,000 BTU commercial air conditioning unit. At the hearing, the male debtor testified that Ms. Catrette also left pots, pans, and silverware on the Leased Premises. The debtors discovered that some of Ms. Cartrette's property remaining on the Leased Premises did not meet their needs. The debtors stored some of Ms. Cartette's unused property outdoors on the back porch behind the restaurant. Ms. Cartrette did not give the debtors permission to leave her property outdoors, and some of her possessions became damaged or weathered by the outdoor elements.

The debtors envisioned operating a large volume restaurant in the wooden building on the Leased Premises with increased seating capacity. The debtors used the services of Farris Hospitality, Inc., to advise them on how to redesign the restaurant to accommodate more customers. The debtors remodeled the restaurant and purchased new restaurant equipment and other items. The restaurant opened in June 2006 and closed March 30, 2007. While occupying the Leased Premises, the debtors allowed insurance to lapse and failed to pay property taxes.

On April 16, 2007, the debtors filed for relief under Chapter 13. On April 17, 2007, the male debtor drove to the restaurant with the intention of removing food from the restaurant kitchen. Ms. Cartrette arrived in the parking lot and told the male debtor not to take anything from the premises. A couple of men approached the male debtor and busted his cell phone. The male debtor left the restaurant and did not return. Ms. Cartrette asserts that she has not prevented the debtors from entering the property, as the debtors are the only individuals with a workable key to the property.

The debtors seek the turnover of their restaurant supplies, equipment and furnishings, computer and office furnishings, all contents in the metal building, restaurant furniture in the metal building, computer systems, walk-in cooler, two six-pan buffet bars, five-pan buffet bar, ice maker, salad bar, Hobart slicer, double-door reach-in freezer, shelving units, eight stainless steel tables, restaurant utensils, plates, cups, bowls, measuring cups, storage containers, two sandwich units, broiler, proofer, two dish and drain tables, mixer, and leased commercial dishwasher (collectively "Restaurant Property"). The debtors are also seeking turnover of their books and business records. At the hearing, the debtors clarified that they did not mix the Restaurant Property with Ms. Cartrette's possessions left on the premises, and they are not seeking turnover of any of Ms. Cartrette's property.

The debtors have no immediate need to use their Restaurant Property. The debtors would like to sell the Restaurant Property once they have finished completion of their home. At this time, the debtors are seeking to obtain a loan to finish the home construction. As set forth in its order entered June 6, 2007, the court is requiring the debtors to clarify the tax issues in this case. In order for the debtors to file outstanding tax returns, they need to access their books and business records housed on the rental premises.

The trustee questions the debtors' ability to confirm a plan in this case and asserts the proposed plan is insufficient. Because the debtors have no immediate need to use the Restaurant

Property, the trustee recommends that any turnover of the Restaurant Property be postponed until confirmation of a plan.

When the debtors filed bankruptcy on April 16, 2007, they were current on monthly payments to BB&T. The debtors made the March 2007 payment, and the next payment was not due until the twentieth day of April 2007. As of the filing date, the landlord held no lien against any of the debtors' property because the debtors had not vacated the premises for 21 or more days after the paid rental period had expired. N.C. Gen. Stat. 44A-2(e). Nevertheless, with such doubt regarding the feasibility of a Chapter 13 plan, it appears premature to require the turnover of the Restaurant Property when it is uncertain whether a plan will be confirmed in this case. It is imperative, however, that the debtors have access to their books and records in order to provide accurate financial information and to clarify the tax issues in this case.

The Catrettes seek to repossess the Leased Premises so that they can find new tenants. In addition, they assert that the male debtor should be held in contempt for attempting to sell the contents of the Leased Premises to Jimmy Carter on April 17, 2007. There was no evidence of contemptuous conduct by the male debtor; moreover, the male debtor denied that he had attempted to sell anything from the Leased Premises to Jimmy Carter.

Based on the foregoing, the court finds that the male debtor has not engaged in contemptuous conduct. The court, therefore, denies the Cartrette's motion for a show cause order. The court grants the Cartrette's motion for relief from stay in part to allow the Cartrettes to access the Leased Premises, to show the Leased Premises to prospective tenants, and to arrange for a new lease. The debtors shall provide the Cartrettes a workable key to the Leased Premises. The debtors shall have access to the Leased Premises for the limited purpose of retrieving their books and business records. In the event business records are maintained on computers, the debtors shall have access to the computers to obtain

4

their business records. The court will defer ruling on the remainder of the debtors' turnover motion regarding the Restaurant Property until confirmation.

END OF DOCUMENT